(Nos. 2774-2781-2783-2785-2787-2789-2793-2799-2813-2822, Consolidated—

C. Lombardo, et al., No. 2774, California Wine Co., No. 2781, Golden Mist Wine Co., No. 2783, LaPerla Vineyard Co., No. 2785, Pacific Wine Co., No. 2787, Frank Cimino, No. 2789, Fruit Industries, Ltd., No. 2793, Vincent Bondi, No. 2799, Joe Grein and H. Pahls, Inc., No. 2813 and E. G. Lyons and Raas Co., No. 2822, Claimants vs. State of Illinois, Respondent.

*Opinion filed July 8, 1936.*

Allen H. Schulz, for claimants.

Otto Kerner, Attorney General; John Kasserman, Assistant Attorney General, for respondent.

Mr. Justice Yantis delivered the opinion of the court:

A stipulation has been filed in the above entitled cases that inasmuch as the above claims involve the same questions of fact and law and the claimants are represented by the same Attorney, all of said matters may be considered under the one stipulation of facts. Under each claim a refund of license fees previously paid under the direction of the Illinois Liquor Control Commission is requested.

The respective amounts of the several claims are as follows:

| | | |
|---|---|---|
| C. Lombardo, et al. | No. 2774 | $400.00 |
| California Wine Co. | 2781 | 250.00 |
| Golden Mist Wine Co. | 2783 | 250.00 |
| La Perla Vineyard Co. | 2785 | 250.00 |
| Pacific Wine Co. | 2787 | 250.00 |

| Frank Cimino | 2789 | 250.00 |
|---|---|---|
| Fruit Industries, Ltd. | 2793 | 250.00 |
| Vincent Bondi | 2799 | 250.00 |
| Joe Grein and H. Pahls, Inc. | 2813 | 250.00 |
| E. G. Lyons and Raas Co. | 2822 | 250.00 |

Claimants are all engaged in the business of bottling bulk wines for resale in the City of Chicago. Two classes of distributors are provided for in the wording of the statute, i. e.

"A distributor who receives bulk wines from licensees in Illinois; and an importing distributor who may bring bulk wines into Illinois from other states. The fee for an importing distributor's license is $250.00. The fee for a distributor's license is $100.00. The license fee for the manufacture of wine and beer is $500.00."

Par. 25, Sec. 4, Art. 5, Chap. 43, Dram Shops Article 5, Section 1 of said Chapter 43 provides as follows:

"Licenses issued by the Department of Finance upon the direction of the Illinois Liquor Control Commission shall be in the following classes:

(a) Manufacturer's license
(b) Importing distributor's license
(c) Distributor's license
(d) Retailer's license

\* \* \* \*

(a) A manufacturer's license shall allow the manufacture, storage and wholesale distribution and sale of alcoholic liquors to licensees in the State and to persons without the State as may be permitted by law.

(b) An importing distributor's license shall allow the wholesale purchase, importation and storage of alcoholic liquors to licensees in this State and to persons without the state as may be permitted by law; and shall permit the purchase of alcoholic liquor in barrels, casks or other bulk containers and the bottling of such alcoholic liquors before resale thereof, but all bottles or containers so filled shall be sealed, labeled, stamped and otherwise made to comply with all provisions, rules and regulations governing manufacturers in the preparation and bottling of alcoholic liquors.

(c) A distributor's license shall allow the licensee to do all the things provided for in paragraph (b) of this section for an importing distributor's license, except the importation of alcoholic liquors."

Under the provisions of Article 3, Section 12, Par. 15, Chap. 43 of the Dram Shop Statute the Illinois Liquor Control Commission is given the following powers:

"(2) To fix by regulation the standards of manufacture of alcoholic liquors not inconsistent with Federal law in order to insure the use of proper ingredients and methods in the manufacture and distribution thereof, and to establish rules, not inconsistent with Federal laws, for the proper labeling of containers or barrels, casks or other bulk containers or bottles of alcoholic liquor manufactured or sold in this State."

Under what the Commission understood to be its power it adopted the following regulation:

"Any person who acquires any acoholic liquors and bottles or changes the containers of such alcoholic liquor, either in its original condition or after having rectified, blended or fortified the same, is deemed to be a manufacturer and is required to obtain a manufacturer's license."

Regulation 6(a) Joint Rules and Regulations of Illinois Liquor Control Commission and Department of Finance, effective February 1, 1934 and issued in pamphlet form. (Rescinded May 31, 1935.)

As originally promulgated, regulation 6(a) of the Joint Rules and Regulations of the Illinois Liquor Control Commission and the Department of Finance, would have required each claimant to procure a license to manfacture wine and beer, such license fee being Five Hundred ($500.00) Dollars. Prior to the first day of May, 1935, when the fiscal license period commenced, claimants objected to the payment of a license fee on the basis of Five Hundred ($500.00) Dollars, contending that under the statute they were not manufacturers but were distributors and that as such, each of claimants, other than C. Lombardo (Claimant No. 2774), were importing distributors and therefore subject to a license payment of only Two Hundred Fifty ($250.00) Dollars each, and that C. Lombardo was a distributor only and as such was subject only to the payment of a license fee of One Hundred ($100.00) Dollars.

The question of the construction of the Dram Shop Act and the regulation of the Commission and of the apparent conflict between the two was brought to the attention of the Commission prior to May 1, 1935. Claimants in each instance objected to the payment of a manufacturer's license of Five Hundred ($500.00) Dollars but was of necessity compelled to be licensed under the Illinois Law on May 1, 1935 or discontinue their business. Each of said claimants therefore paid the sum of Five Hundred ($500.00) Dollars for a Class B manufacturer's license; such payment being made under a written protest. The record shows that the Illinois Liquor Control Commission at that time stated that it would recommend a refund as soon as the regulation could be rescinded to conform to the statute, and that the Department of Finance stated that it would not be necessary for claimants to

go through any legal procedure to obtain same. Claimants relied upon such instructions and filed no suits for temporary injunctions in regard to said funds. On May 31, 1935 Regulation 6(a) as above set forth, was duly rescinded by the unanimous vote of the Commission and a recommendation for the refund of the amount due the several claimants was sent to the Department of Finance, the Commission then stating that, ''An importing distributor is given the right to bottle wine; that a Class C license is sufficient license to cover the applicant.'' An inquiry was directed by the Finance Department to the Attorney General's Office as to the power of the Department to make such refunds. Noting no specific provision in the statute authorizing a refund in a case of this kind, the Attorney General ruled that the Finance Department could not comply with the recommendation of the Liquor Control Commission. The claims were thereupon filed in the Court of Claims.

The court does not regard these claims as analogous to those in which a franchise tax has been paid under the terms of a statute then existing and which was later declared unconstitutional, in which cases as indicated in *The Arundel Corporation* vs. *State,* 8 C. C. R. 506, an award will be denied. The statute under which claimant was required to obtain his license was plain and specific. An importing distributor's license was stated to be Two Hundred Fifty ($250.00) Dollars, and a distributor's license One Hundred ($100.00) Dollars. The privilege which each was to enjoy by reason of said license was also clearly set forth under Paragraphs (b) and (c) of Article 5, Section 1, Chapter 43. We believe the overpayments made by claimants should be treated in each instance as a mistake of fact and that as such, a refund of the amount overpaid should be due.

"Where payment of a Franchise Tax is made under a mutual mistake of fact a refund will be made."

*Comm. Nat. Bank & Trust Co.* vs. *State,* 7 C. C. R. 122.

*Fowler Mfg. Co., Ltd.* vs. *State,* 8 C. C. R. 160.

"Claimant having inadvertently paid more than it was legally required to pay without any fault on its part, claimant should be reimbursed in the amount of such excess payment."

*Automatic Recording Safe Co.* vs. *State,* 8 C. C. R. 366.

We do not regard the conflicting regulations of the Illinois Liquor Control Commission as controlling, when in con-

flict with the expressed provisions of the statute, and it is apparent that the Commission was of the like opinion, for the conflicting regulation was promptly rescinded. An award is hereby recommended to the several claimants as follows:

| | |
|---|---|
| C. Lombardo, J. Finocchiaro and J. Cumbo, operating as Lombardo Wine Co., No. 2774 | $400.00 |
| California Wine Co., Inc., No. 2781 | 250.00 |
| Golden Mist Wine Co., Inc., No. 2783 | 250.00 |
| LaPerla Vineyard Co., Inc., No. 2785 | 250.00 |
| Pacific Wine Co., Inc., No. 2787 | 250.00 |
| Fruit Industries, Ltd., No. 2793 | 250.00 |
| Vincent Bondi, No. 2799 | 250.00 |
| Joe Grein and H. Pahls, Inc., No. 2813 | 250.00 |
| E. G. Lyons and Raas Co., Inc., No. 2822 | 250.00 |

It appears from the record that claimant Frank Cimino, No. 2789 is indebted to the State of Illinois in the sum of Five Hundred Fifty ($550.00) Dollars. An award is therefore made in favor of Frank Cimino in the sum of Two Hundred Fifty ($250.00) Dollars for the use of the State of Illinois; same to be credited by the Department of Finance upon the said indebtedness of Five Hundred Fifty ($550.00) Dollars due and owing by the said Frank Cimino to respondent.